IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE RENE FLOYD,

    Plaintiff,                  No. CIV S-08-2346 WBS CKD P

   vs.

N. GRANNIS, et al.,                <u>ORDER AND</u>

    Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendants Cantwell, Dang and Sogge[1] (defendants) move for summary judgment. The court notes that plaintiff has filed a sur-reply with respect to the motion for summary judgment. Under Local Rule 230(l), sur-replies are not permitted. Because plaintiff did not seek leave to file a sur-reply, it will not be considered.

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

---

[1] The docket identifies defendant Sogge as defendant "Soggie." In defendants' July 17, 2009 answer, he is referenced as "Sogge."

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 14, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

In his November 17, 2008 complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. At all relevant times, defendants Cantwell and Dang were employed by the California Department of Corrections and Rehabilitation (CDCR) as physicians at Corcoran State Prison. Defendant Sogge was employed by CDCR as a physician at California State Prison Sacramento (CSP Sac.).

2. On October 24, 2004, plaintiff was informed by Dr. Dang that he had been diagnosed with hepatitis C. A week later, plaintiff was transferred to CSP Sac. On September 9, 2006, plaintiff learned, after reviewing his medical file, that the initial diagnoses was in November, 2001 while he was housed at Corcoran. Plaintiff asserts that he also learned from his records that Cantwell and Dang knew plaintiff was diagnosed in 2001.

3. In August, 2006, plaintiff began treatment which was terminated 90 days later. Plaintiff asserts defendant Sogge informed plaintiff that there were not significant signs of improvement and it was the policy of CSP Sac. to terminate treatment under such circumstances. Plaintiff indicates, however, that he was informed by some unidentified source that he was, in fact, responding well to treatment.

On April 7, 2009, a magistrate judge who was previously assigned to this case found that the allegations above state claims for violation of the Eighth Amendment against defendants.

The Eighth Amendment demands that prison officials not act in a manner "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment claim based on inadequate medical care has two elements, "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

/////

/////

A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104).

Deliberate indifference to a medical need is shown when a prison official knows that an inmate has a serious medical need and disregards that need by failing to respond reasonably to it. See Farmer v. Brennan, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

1. Defendant Cantwell

Defendants argue there are no facts suggesting defendant Cantwell was ever deliberately indifferent to a serious medical need of plaintiff's. Defendants point to evidence (Mot., Ex. C) indicating Cantwell treated plaintiff for back pain in 2003. Cantwell indicates, at that time, he was not aware that plaintiff had hepatitis C, plaintiff had not been diagnosed with hepatitis C, nor did plaintiff have any symptoms of hepatitis C. From Cantwell's review of plaintiff's medical records, Cantwell asserts plaintiff was not diagnosed with having hepatitis C until February, 2004.

In his opposition, plaintiff fails to point to anything suggesting that before being treated by Cantwell, or during the period of time Cantwell treated him, plaintiff had been diagnosed with hepatitis C. Further, he fails to point to anything indicating Cantwell was, or should have been aware that plaintiff had hepatitis C during that time. In light of the failure of proof on these key points, defendant Cantwell is entitled to summary judgment with respect to plaintiff's Eighth Amendment claim against him.

Plaintiff suggests in his opposition that the basis of his Eighth Amendment claim is not that defendant Cantwell knew plaintiff had hepatitis C and chose not to do anything about

it. Rather, it concerns Cantwell's failure to test for hepatitis C. However, that was not pled in plaintiff's complaint, and plaintiff does not seek leave to amend. In any case, the "deliberate indifference" standard above requires that a defendant have knowledge of a serious medical problem and then indifference to it. Since nothing suggests defendant Cantwell knew, or even should have known, that plaintiff had hepatitis C, plaintiff has no Eighth Amendment claim.

It could be argued that testing for hepatitis C would be a necessary component of treatment to alleviate certain physical problems, such as sickness or pain of some sort, and that failure to treat in that way amounts to deliberate indifference. But, plaintiff does not point to any evidence, which almost certainly would have to be presented through expert testimony of a physician, indicating he presented with any such physical problems. Furthermore, he does not point to any facts indicating he suffered any injury as a result of Cantwell not learning of plaintiff's hepatitis C. Plaintiff presented with back pain and nothing indicates the course of treatment prescribed by defendant Cantwell was not appropriate for that.

2. Defendant Dang

Defendants argue there are no facts suggesting defendant Dang was ever deliberately indifferent to a serious medical need. Evidence indicates Dang treated plaintiff for hypertension and seizures in 2002. Opp'n, Ex. D at 9-10. Nothing suggests Dang was aware at that point that plaintiff had hepatitis C. Again, at that point, plaintiff had not been diagnosed with hepatitis C, nor did plaintiff have any symptoms of hepatitis C. After plaintiff tested positive for hepatitis C, Dang ordered follow-up testing on September 22, 2004 and then again on October 26, 2004. Mot., Ex. C. When Dang met with plaintiff on October 26, 2004, he gave plaintiff a handout on hepatitis C and told him he should not drink alcohol. Id. As indicated above, plaintiff was transferred to CSP Sac in early November, 2004.

Plaintiff fails to point to any evidence indicating Dang's treatment amounts to deliberate indifference. Nothing suggests Dang knew or should have known that plaintiff had hepatitis C when he treated plaintiff for seizures and hypertension in 2002. Dang saw plaintiff

for a very limited period of time after he learned plaintiff had hepatitis C. Once he learned plaintiff had hepatitis C, he ordered more tests to determine the severity of plaintiff's condition. There is nothing before the court indicating any further treatment would have been appropriate, let alone that Dang could be said to have been deliberately indifferent to a serious medical problem for not doing more. He should be granted summary judgment.

As with defendant Cantwell, plaintiff now asserts Dang was deliberately indifferent for failing to adequately test for hepatitis C when Dang saw plaintiff in 2002. That argument should be rejected for the same reasons as plaintiff's argument concerning Cantwell.

The court notes that buried in his February 14, 2011 opposition to defendants' motion for summary judgment, under the heading "Disputed Facts Concerning Defendant Dang," is a request that plaintiff be permitted to conduct discovery with respect to plaintiff's claims against defendant Dang before the court rules on defendants' request that Dang be granted summary judgment. From a review of the docket, it appears discovery closed on this case before defendant Dang appeared on August 4, 2010.

Plaintiff's request will be denied. First, the manner in which plaintiff makes his request, by placing it inconspicuously on the 27th page of 42 pages of text, is improper. Also, the request is not timely as plaintiff waited over six months after Dang appeared to request leave to conduct discovery. Most importantly, there is nothing before the court suggesting that if plaintiff were allowed leave to conduct discovery with respect to his claims against defendant Dang, that Dang would not be granted summary judgment. As indicated above and after reviewing page after page of exhibits, including plaintiff's medical records, there is nothing before the court suggesting Dang was deliberately indifferent for not treating plaintiff's hepatitis C or for not testing plaintiff for hepatitis C. Considering these facts, it is simply not reasonable to assume that more discovery, which at this point would most likely only take the form of interrogatories directed to defendant Dang, would yield information sufficient to save any of plaintiff's claims.

3. <u>Defendant Sogge</u>

As indicated above, plaintiff asserts defendant Sogge wrongfully terminated plaintiff's treatment for hepatitis C in late 2006. Defendants present the following evidence concerning this claim in exhibits A and B attached to their motion:

1. Sogge saw plaintiff on May 25, 2005. A liver biopsy was ordered. The result of the biopsy showed that plaintiff had "chronic hepatitis C."

2. Sogge saw plaintiff again on August 16, 2005 and advised him he met the criteria for treatment. Sogge also explained the side effects of treatment. Plaintiff indicated he needed time to think about whether he wanted treatment.

3. On February 1, 2006, plaintiff consented to treatment with pegylated interferon and ribavirin and treatment was begun.

4. Defendant Sogge saw plaintiff three months later on May 24, 2006. Sogge noted that tests revealed that plaintiff did not have a "two-log drop" in his viral load. That being the case, he ordered that treatment with pegylated interferon and ribavirin cease. Sogge indicates that because plaintiff did not have a "two-log drop" he was considered a "non-responder" to the prescribed treatment. Sogge ordered that treatment cease because the potential for harm associated with the side effects of the treatment outweighed the chances that plaintiff would have a sustained response with further treatment. Other tests revealed that plaintiff, at that point, had not suffered significant liver damage.

5. While defendant Sogge discontinued treatment with pegylated interferon and ribavirin he told plaintiff to avoid alcohol and intravenous drug use. He also ordered liver tests take place every three months and a follow up within a year or sooner depending on test results.

6. With respect to plaintiff's condition, neither CDCR guidelines, nor the standard of care for treatment of hepatitis C called for continuing treatment with pegylated interferon and ribavirin.

/////

7. In January, 2007 and pursuant to requests made by plaintiff, Sogge referred plaintiff for a second opinion regarding the cessation of treatment with pegylated interferon and ribavirin. Sogge expected that the "second opinion" would be consistent with his decision to stop treatment, but made the referral to help plaintiff accept the decision.

8. Defendant Sogge did not treat plaintiff after referring him for a second opinion.

9. Plaintiff saw Dr. Tran for his second opinion on March 27, 2007. Dr. Tran recommended medication for abdominal pain, annual ultrasounds to rule out cancer and requested plaintiff's medical file so that Tran could further evaluate the severity of plaintiff's hepatitis C and treatment alternatives.[2]

In his opposition, plaintiff fails to point to any evidence indicating that Sogge's cessation of treatment with pegylated interferon and ribavirin was in any way medically inappropriate. Therefore, Sogge is entitled to summary judgment as to plaintiff's claim that Sogge was deliberately indifferent to plaintiff's hepatitis C by ceasing that treatment.

Plaintiff asserts in his opposition for the first time that Sogge prescribed the incorrect dosages of pegylated interferon and ribavirin. This is not alleged in plaintiff's complaint, and plaintiff has not sought leave to file another complaint. In any case, plaintiff still has not presented a genuine issue of material fact as to whether defendant Sogge was deliberately indifferent. According to medical records provided by plaintiff, on February 1, 2006, defendant Sogge ordered that plaintiff take 600 mg of ribavirin in the morning and 400 mg in the evening for 48 weeks. Opp'n, Ex. D at 21. In a declaration attached to defendants' reply brief, defendant Sogge admits that because plaintiff weighed over 200 lbs at the time Sogge prescribed ribavirin,
/////

---

[2] In his complaint, and then again in his opposition, plaintiff seems to blame defendant Sogge for not sending plaintiff's medical file with plaintiff when plaintiff visited Dr. Tran. However, there is nothing before the court indicating it was defendant Sogge's responsibility, and nothing suggesting defendant had any duty under the Eighth Amendment, to make sure plaintiff's medical file went with plaintiff. Also, Dr. Tran was free to request the file if he felt he needed it, as he did in fact did.

the general "guidelines" call for a daily dose of 1,200 mg.[3]  However, according to Sogge, the "guidelines also expect the treating physician to set the dose based on the individual patient's needs."  Further, Sogge states "[t]he physician must balance the goal of obtaining optimal results in treating hepatitis C with the need to minimize adverse effects from the combination of therapy on a patient's other medical conditions."  Sogge noted the following factors warranted his prescribing only 1,000 mgs:

    1. The risk of hemolytic anemia;

    2. Plaintiff suffers from hypertension; and

    3. To minimize the risk of aggravating plaintiff's depression and seizure disorders since the combination pegylated interferon and ribavirin treatment has been known to aggravate those conditions.

       While the universe of facts before the court might create a genuine issue of material fact as to whether defendant Sogge prescribed plaintiff the optimum dosage of ribavirin, it cannot be suggested that, in light of all of the treatment Sogge provided, Sogge inflicted cruel and unusual punishment on plaintiff by being deliberately indifferent to plaintiff's hepatitis C especially since plaintiff fails to point to any evidence indicating that a 200 mg daily departure from the general guidelines for treatment with ribavirin harmed him in any way or significantly reduced the possibility that plaintiff would respond favorably to the treatment.

       In light of the foregoing, defendants are all entitled to summary judgment.  Whether or not the treatment the plaintiff received was optimal, there is no reasonable dispute as to whether defendants "punished" plaintiff by being "indifferent" to plaintiff's sickness.  Nor are

\\\\

\\\\

\\\\

---

[3] Documents provided by plaintiff indicate the dose recommended for persons under 165 lbs is 1,000 mgs.  Opp'n, Ex. E at 10-11.

there any facts before the court suggesting that any one of them did anything which resulted in harm to plaintiff.[4]

In accordance with the above, IT IS HEREBY ORDERED that:

1. The March 15, 2011 sur-reply filed by plaintiff concerning defendant Cantwell, Dang and Sogge's motion for summary judgment is stricken.

2. Plaintiff's request for leave to conduct discovery as to his claim against defendant Dang is denied.

IT IS HEREBY RECOMMENDED that:

1. Defendant Cantwell, Dang and Sogge's November 5, 2010 motion for summary judgment be granted; and

2. Defendants Cantwell, Dang and Sogge be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 12, 2011

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
floy2346.57

---

[4] Considering there are no facts before the court which could establish plaintiff was deprived of a Constitutional right, defendants are also immune from suit under the "qualified immunity" doctrine.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).